

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 6, 2023

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States* v. *Elijah Smith*, 22 Cr. 667 (LJL)

Dear Judge Liman:

      The Government respectfully submits this letter in advance of the July 13, 2023 sentencing of defendant Elijah Smith. For the reasons set forth below, the Government respectfully submits that a sentence of at least 180 months, above the U.S. Sentencing Guidelines ("Guidelines") range of 87 to 108 months, would be sufficient but not greater than necessary to serve the purposes of sentencing.

**I.**      **Criminal History and Offense Conduct**

      On June 8, 2022, Smith arranged to purchase several ounces of marijuana from a dealer in the Bronx. Presentence Investigation Report ("PSR") ¶ 7. But when the marijuana dealer pulled up with a driver at the pre-arranged location, near the intersection of Mosholu Parkway and East 203rd street, Smith made no attempt to purchase the marijuana as promised. *Id.* Instead, after entering the backseat of the car, he drew a gun and attempted to rob the dealer, who was sitting in the front passenger seat. When the dealer refused to give up his marijuana, Smith shot the marijuana dealer in the back. As captured on surveillance footage, Smith then fled the car and the scene carrying the gun. *Id.*

      The victim was hospitalized for his life-threatening gunshot wound. According to a physician who administered treatment, the bullet struck the victim in his spinal cord, paralyzing him from the waist down. The physician also advised that the victim could be permanently paralyzed. *Id.* ¶ 10.

      This case is the defendant's fourth felony conviction. He has two youthful offender adjudications for second degree robbery, PSR ¶¶ 27-28, and is awaiting sentencing for a conviction for attempted criminal possession of a weapon, PSR ¶ 29. In fact, he committed the attempted robbery in this case while on bail in connection with the state weapons charge. PSR

The Hon. Lewis J. Liman                                                                                                   Page 2
July 6, 2023

¶ 29. The defendant thus stands before the Court at sentencing having nearly murdered the victim in this case and with a serious record of prior violent crimes.

## II.    Procedural History

### A.    The Plea Agreement and Calculation of the Stipulated Guidelines Range

On March 23, 2023, pursuant to a plea agreement, Smith pled guilty to Count One of the Indictment, charging him with attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2. PSR ¶ 3. Count One carries a maximum term of imprisonment of 20 years and a maximum term of supervised release of three years. *Id.* ¶¶ 60, 63.

As detailed in the PSR, based on enhancements for discharge of a firearm, the infliction of a permanent or life-threatening bodily injury on the victim, and the attempted taking of a controlled substance, the Government calculated an offense level of 32. This was reduced to an offense level of 30 in light of Smith's acceptance of responsibility, pursuant to U.S.S.G. § 3El.1(a), and will be reduced to 29 after the Government moves for and if the Court grants an additional one-level reduction, pursuant to U.S.S.G.§ 3El.l(b), for Smith's timely notice of his intention to enter a plea of guilty. *Id.* ¶ 4(g).

For reasons further detailed below, Smith's criminal history category is I. Thus, the Guidelines range to which the parties have stipulated is 87 to 108 months' imprisonment (the "Stipulated Guidelines Range"). *Id.* ¶ 61. Because the offense is a Class C Felony, the Guidelines range for a term of supervised release is one year to three years, pursuant to U.S.S.G. §5D1.2(a)(2). *Id.* ¶ 64.

Probation agrees with the parties' Guidelines calculation and recommends 87 months' imprisonment followed by two years' supervised release.

## III.    Discussion

### A.    Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted

The Hon. Lewis J. Liman  Page 3
July 6, 2023

sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Substantial Sentence Above the Stipulated Guidelines Range Is Appropriate in This Case

The egregious facts of this case call for the imposition of a sentence above the Stipulated Guidelines Range. The defendant is a recidivist violent felon who committed this attempted robbery and near-murder while on bail for a state firearms case. PSR ¶ 29. He brought a gun to a purported marijuana deal and shot his victim while attempting to steal a few ounces of marijuana. But as discussed above, the defendant had no intention of buying marijuana from the victim. Instead, he intended to steal from the victim, and shot him when the victim refused to give up his marijuana. His victim is now confined to a wheelchair and will likely never walk again.

Virtually all the Section 3553(a) factors—the nature and circumstances of Smith's offense, his criminal history, and the need to promote respect for the law, to provide just punishment, to protect the public, and to deter future criminal conduct—weigh in favor of a substantial sentence. For the reasons detailed below, a sentence substantially above the Stipulated Guidelines Range of 87 to 108 months' imprisonment is necessary to serve these sentencing purposes.

#### 1. *The Defendant deliberately brought a gun to a marijuana deal and shot the victim at point-blank range, paralyzing him.*

As a starting matter, Smith's offense is most striking for the absolute disregard he exhibited for the value of human life from start to end, culminating in the tragic and likely permanent paralysis of his victim.

The planned drug transaction involved several ounces of high-quality marijuana. But rather than paying for the drugs as promised, Smith arrived at the marijuana deal armed with a loaded gun, plainly with the intention of using it to threaten the victim into submission and rob him of his marijuana. But when the victim resisted, Smith did not give up. Instead, he shot the victim. Because of how Smith and victim were physically situated during the attempted robbery—inside a car, with Smith holding a gun and seated directly behind the victim—the victim was entirely at Smith's mercy when Smith pulled the trigger at point-blank range. The victim could have easily been killed by the bullet, and the location of the gunshot in his spine and other record evidence establish the life-threatening nature of the injury. Fortunately, the victim survived, but because of Smith's

actions, the victim is now paralyzed from the waist down and confined to a wheelchair. In sum, this was a crime motivated by greed, executed with deliberation, and completed with life-altering consequences for the victim.

### 2. The Guidelines range understates the defendant's criminal history.

In assessing the appropriate sentence in this case, the Court should also consider the ways in which Smith's criminal history category understates his record of violence and illegal weapons possession. Specifically, Smith received two youthful offender adjudications for robbery in the second degree in 2012 and 2013 (the latter with a loaded firearm), and in 2021 was convicted of attempted possession of a weapon in the second degree, for a loaded firearm. But because of the short sentence he received for his first robbery (mere probation, followed by seven months' imprisonment after he violated probation), the lack of available information about the sentence he received for his second robbery, and the fact he has not yet been sentenced for his 2021 weapons offense, he received only one criminal history point, for the 2021 conviction alone. His criminal history is therefore category I, far below what might be expected for three convictions for recurring violence and weapons possession in the last seven years.

In light of the above, the Government respectfully disagrees with Probation's recommendation that Smith be sentenced to 87 months' imprisonment, at the very bottom of the Guidelines range. A more substantial sentence above the Guidelines range, of at least 180 months, is appropriate and necessary to afford adequate deterrence of serious criminal conduct of this kind, both for this defendant and other would-be criminals.

### 3. The defendant's request for a below-Guidelines sentence is wholly unsupported by the facts of the defendant's particular case.

Smith contends that he should be given a below-Guidelines sentence of 60-72 months based on alleged mitigating circumstances and his "rehabilitative efforts" while incarcerated. His contentions are entirely unpersuasive in establishing the sufficiency of such a sentence.

Despite readily conceding that he "was incredibly lucky to grow up in a home where he was raised by both of his parents and surround by sibling who loved and cared about him, and free from neglect or abuse," Def's Br. 2, Smith contends that bullying he experienced outside the home "led him to make poor decisions and substance abuse issues." *Id.* at 5. Notwithstanding these struggles, for which he appears to take no personal responsibility, Smith claims that "his life changed when his son, K.S., was born in 2021" and has submitted to the Court various exhibits from friends and family members who contend that he is a "caring father, son and friend." *Id.* at 2. In further support of his changed person, he claims that, while incarcerated, he took two three-day courses—one to obtain a certificate for his commercial driver's license, and another that involved teaching inmates—and that these "rehabilitative efforts should weigh heavily in supporting a downward variance to a sentence of between 60-72 months. Lastly, he contends that he "has absolutely no criminal history," aside from "one outstanding charge [that] will run concurrently to this federal conviction." *Id.* at 5.

Smith's claims are belied by the record. First, the assertion that Smith has no criminal history is patently incorrect. Smith's youthful offender adjudications were sealed, and he apparently avoided substantial prior incarceration for committing the underlying crimes. But that

The Hon. Lewis J. Liman  Page 5
July 6, 2023

does not erase the facts of his prior criminal conduct: he is a violent criminal who was *twice* convicted of second-degree robbery before attempting the robbery and committed the shooting in this case.

Second, Smith presents no evidence that he has been successfully rehabilitated. Without acknowledging his history of violence, Smith makes some attempt to distance himself from his troubled past by contending he underwent a transformation in 2021 with the birth of his son. This contention is plainly contradicted by the violent offense to which he has now pled guilty. He shot the victim in cold blood in 2022, well after his son's birth. It may well be that, as reflected in the letters he has submitted to the Court, he has family members and friends who love him and to whom he has demonstrated care and devotion. But that does not change the fact that Smith has repeatedly failed to recognize the humanity of innocent people with whom he shares no such bonds of affection. Smith's latest victim is a human being with his own hopes and dreams for the future, and his own family members and friends who love him. That victim now lives with a bullet hole in his spine, unable to walk, and both he and his loved ones must live with the devastation that Smith has wrought on their lives. As for the several days the defendant has apparently spent seeking to enhance his education while incarcerated, these efforts are commendable but provide no insight whatsoever into his long-term rehabilitation and do not support his requested downward variance. Certainly, these short-term efforts do not offset the plain inclination toward violence established by his history of robberies and the stark facts of this case.

Finally, although sentencing statistics alone cannot determine the appropriate sentence in any particular case, they are a helpful touchstone in considering the defendant's offense in the context of the larger criminal justice system. As the PSR notes, of the 37 defendants sentenced in the last five years under U.S.S.G. § 2B3.1, with an offense level of 29 and a criminal history category of I, the median length of imprisonment was 84 months. PSR ¶ 64. This means the defendant is requesting two years *less* than this median length of imprisonment, despite a host of aggravating factors in his case. He not only discharged a firearm but shot and paralyzed the victim. He committed this violence during an attempted robbery after committing other robberies. And he has failed to present any significant mitigating circumstances for his conduct.

These statistics, combined with the facts of the defendant's case, demonstrate the inadequacy of his requested sentence. His argument for a term of imprisonment between 60 and 72 months should be rejected.

### 4. *A sentence of at least 180 months is sufficient but not greater than necessary to achieve the purposes of sentencing.*

The most urgent objectives of any sentence imposed in this case are to provide just punishment for the lifelong harm Smith inflicted on his victim, and to protect the public from Smith's violence. A sentence above 108 months is needed to accomplish these ends.

As reflected by Smith's past youthful offender adjudications, his repeated interactions with the criminal justice system have not prompted him to redirect his life from one of calculated violence. Instead, his violence escalated. On June 8, 2022, when the target of his violence did not give Smith what he wanted, Smith put that man in a wheelchair for life. Smith's latest resort to violence cannot be tolerated, and the horrific consequences of that violence in this case must be factored into his sentence.

The Hon. Lewis J. Liman    Page 6
July 6, 2023

      Other cases involving similar offense conduct and harm to victims are instructive here. As Judge Sullivan explained before imposing an above-Guidelines sentence of 150 months on a defendant who shot at several people and paralyzed one, there the damage done by the defendant was "almost incalculable in terms of the negative impact on real human lives, real human families," and the sentence needed to account for the fact that for the paralyzed victim, "it will never get better." *United States v. Amar Taylor*, 14 Cr. 212 (RJS), ECF No. 582 (Sentencing Tr., pt. 1), at 25. In affirming the sentence imposed by Judge Sullivan, the Second Circuit reiterated his "compelling" reasoning for imposing an above-Guidelines sentence, including his conclusion that "anything less would be to do a disservice and disrespect the victim here." *United States v. Kilpatrick*, No. 15-3012-CR, 2021 WL 3354737, at *5 (2d Cir. Aug. 3, 2021). In addition, Judge Sullivan underscored the broader need to account for the irreversible and almost infinite risks associated with firing a gun at others. "You don't know exactly what's going to happen to those bullets and who it is going to kill, who it is going to leave paralyzed, who it is going to miss altogether. That is the reason why gun crimes are so serious[,] because you can't take it back." *United States v. Amar Taylor*, 14 Cr. 212 (RJS), ECF No. 623 (Sentencing Tr., pt. 2), at 9.

      Smith, too, has caused irreparable harm to another individual with his pointless violence. The tremendous and ongoing suffering that violence has caused his victim warrants significantly more than 108 months of incarceration. Such a sentence, while substantial, is necessary and just punishment for a man who, after repeated robberies, shot his latest victim at point-blank range, and in broad daylight on a public street. This sentence is also needed to protect the public from Smith's violence and his established disregard for the lives of others.

### IV.  Conclusion

      For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of at least 180 months, above the Stipulated Guidelines Range. This sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney for the
      Southern District of New York

By: _____
      Jane Chong
      Christopher Brumwell
      Assistant United States Attorneys
      (212) 637-2263/ -2477

cc: Lorraine Gauli-Rufo, Esq. (via CM/ECF)